UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKETTA HARDAWAY,

    Plaintiff,

v.

AVEANNA HEALTHCARE, LLC,

    Defendant.

Case No. 23-12246
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING AVEANNA'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [8] AND DENYING AVEANNA'S MOTION TO STRIKE [17]**

Marketta Hardaway claims that her employer, Aveanna Healthcare, LLC, created a hostile work environment for her and other Black employees. (ECF No. 1, PageID.10–11.) When she complained about it, she says Aveanna retaliated against her by forcing her to return to work despite being on medical leave and eventually terminating her. (*Id.* at PageID.12.) So she brought this suit alleging race discrimination and retaliation under Title VII and Michigan's Elliot-Larsen Civil Rights Act.

In response, Aveanna moved to compel arbitration, claiming Hardaway signed an arbitration agreement when she agreed to work there. (*See* ECF No. 8.) That agreement, says Aveanna, contains a delegation clause that delegates to the arbitrator even the threshold question of whether Hardaway's claims are arbitrable. (*Id.* at PageID.54.) Thus, Aveanna asks this Court to dismiss the case or, in the alternative, to stay it pending arbitration. (*Id.* at PageID.57–58.) Aveanna filed a

separate motion asking the Court to strike Hardaway's response as untimely. (*See* ECF No. 17.)

For the reasons that follow, the Court GRANTS Aveanna's motion to compel arbitration and STAYS the case pending arbitration. Because the Court considered Hardaway's untimely response, it DENIES Aveanna's motion to strike.

## I. Motion to Compel Arbitration

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). But the Federal Arbitration Act allows parties to agree that an arbitrator, rather than a court, will determine "'gateway' questions of 'arbitrability,' such as whether the parties['] . . . [arbitration] agreement covers a particular controversy," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010), "or whether a concededly binding arbitration clause applies to a certain type of controversy," *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). *See also Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (internal citation omitted).

Here, when Hardaway began her role as Clinical Nursing Supervisor, she was provided electronic access to Aveanna's Mutual Arbitration Agreement by logging into an iCIMS account. (ECF No, 8-5, PageID.89.) This agreement contains a delegation clause giving the arbitrator "the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any Claim that all or any part of this Agreement is unenforceable, void or voidable." (ECF No. 8-3, PageID.81.) So the Court must only consider the first question: whether a valid agreement to arbitrate exists between the parties.

"[T]he duty to arbitrate arises only from the party's consent. So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration . . . ." *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 843 (6th Cir. 2021) (citation omitted)). Put another way, the Court must conclude that the parties formed a valid arbitration contract before it can enforce the delegation clause within. And if neither party puts "the 'making of the arbitration agreement' (or its breach) . . . 'in issue,'" the Court "'shall make an order' compelling arbitration." *Id.* at 837 (quoting 9 U.S.C. § 4); *see id.* at 835 ("Although the Federal Arbitration Act requires a court to summarily compel arbitration upon a party's request, the court may do so only if the opposing side has not put the making of the arbitration contract 'in issue.'").

Here, Aveanna has put forth an arbitration agreement that Hardaway allegedly signed, but Hardaway disputes that she ever did so. However, she does not

3

adequately put the making of the arbitration contract "in issue," so the Court must grant Aveanna's motion to compel.

To determine whether the party opposing arbitration has put the contract "in issue" within the meaning of the Federal Arbitration Act, 9 U.S.C. § 4—especially where, as here, the parties' rely on materials outside the pleadings—courts apply the familiar summary judgment standard under Federal Rule of Civil Procedure 56, asking whether the opponent's evidence creates "a genuine issue of fact over whether [s]he . . . accepted the [arbitration] contract." *Boykin*, 3 F.4th at 835. The opponent must put forth "'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that [s]he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Id.* at 839 (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)). "[C]onvenient memory lapses do not create factual disputes that are genuine," *id.* at 839–40 (collecting cases), but "'unequivocal denial' that takes the form of admissible 'evidence' can," *id.* at 840 (quoting *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981)).

Hardaway avers that she "never signed any document entitled 'Mutual Arbitration Agreement'" (ECF No. 14-1, PageID.165), and that Aveanna's evidence fails to prove that she did. She says the "alleged agreement" is "no more than a check box," and does not contain her signature or a date. (ECF No. 14, PageID.153.) The only other evidence "that [she] actually saw, read, and understood" the arbitration agreement, she adds, is an affidavit from an Aveanna employee. (*Id.*) And she asserts that the "the screenshots provided in . . . the affidavit . . . offer[] no information that

4

[she] was the one signing, that she had time to review the documents, and/or that she understood the documents." (*Id.* at PageID.153–154.)

But Hardaway's position is inconsistent. In her own affidavit and response brief, she also says that she "do[es] not recall" seeing or signing an arbitration agreement (*id.*), that she "would not have signed an arbitration agreement without further explanation of what arbitration is and how her rights were affected" (ECF No. 14, PageID.159), and that "she was not told there was an arbitration clause nor . . . given time to review [it]" (*id.* at PageID.160). Thus, it is unclear whether Hardaway's argument is that she *did not* sign an arbitration agreement, or that she *does not recall* signing an arbitration agreement. Moreover, even her denial is not "unequivocal." She says she never "signed a document entitled 'Mutual Arbitration Agreement,'" but does not say that she never checked a box indicating her agreement to the arbitration agreement. Put differently, Hardaway appears to ignore that assent to the arbitration agreement was electronic and checking the signature checkbox was the equivalent to a handwritten signature. (ECF No. 8-5); *see also Brown v. Heartland Emp. Servs., LLC*, No. 19-11603, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020) ("[A]lthough [the plaintiff] denies clicking 'Acknowledge' knowing that the result would be to mandate arbitration, she does not deny clicking the button.")

But regardless of whether Hardaway contends that she did not sign, does not recall signing, or would not have signed the arbitration agreement, her arguments fail for other reasons.

5

First, to the extent she argues she did not intend to be bound by an arbitration agreement, a "naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1002 (6th Cir. 2009) (omission in original) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)).

Second, to the extent that she does not remember signing the agreement or reading the policy, "[e]mployees may be bound by their signatures on an arbitration agreement even if they do not remember signing the agreement and even if they state that they never saw the policy." *Brown*, 2020 WL 2542009, at *4 (citing *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."); *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 125–26 (6th Cir. 2003) ("Michigan law 'presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.'").

In other words, even if Hardaway does not *remember* signing the agreement and did not *intend* to agree to arbitrate, she can still be compelled to arbitrate if she in fact signed the agreement.

And it is clear that Hardaway did electronically sign the agreement. Aveanna provided a copy of the agreement (ECF No. 8-3), Hardaway's electronic signature

6

acknowledging she read and agreed to it (ECF No. 8-4), and an affidavit from a human resources employee and system administrator verifying, through screenshots of Hardaway's employee account and its data, that Hardaway read and signed the agreement (ECF No. 8-5). The human resources employee further explained that in order to complete her onboarding, Hardaway created an account on the company's hiring platform, iCIMS, "using her personal email address and a password that she selected and [that] was not disclosed to any other employee or member of management." (ECF No. 8, PageID.42.) Hardaway used that account to complete "critical Company documents, such as her W-4 tax form, payroll deduction authorization"—and Aveanna's arbitration agreement acknowledgement. (*Id.* at PageID.43.) Screenshots in the affidavit further show that Hardaway accessed and electronically signed the arbitration agreement. (ECF No. 8-5, PageID.89–90.) And under federal law and Michigan law, electronic signatures are legally enforceable. 15 U.S.C. § 7001; Mich. Compl Laws § 450.837; *see also Martyn v. J.W. Korth & Co.*, No. 11-407, 2011 WL 2144618, at *2 (W.D. Mich. June 1, 2011).

Hardaway's ambiguous affidavit, claiming both that she did not sign the arbitration agreement and that she did not remember signing the agreement, is insufficient to put the agreement's validity "in issue" in light of Aveanna's clear evidence showing otherwise.

In a similar case in this District, the Court reached the same conclusion. There, the employer presented an "electronic record showing that" the plaintiff completed a training on the company's arbitration agreement and, at the end of the training,

7

"acknowledged the mutual agreement to arbitrate claims." *Brown*, 2020 WL 2542009, at \*3. It provided "a copy of the screens [the plaintiff] would have seen when completing the [training]" and an affidavit of the human resources operations director in charge of the company's online policy and training software. *Id.* The HR employee's "sworn statement explain[ed] how the [arbitration training] worked . . . [and] that [the plaintiff] did not exercise her option to opt [out]." *Id.* The only evidence the plaintiff presented was her "sworn declaration," which contained contradicting positions that she did not see the agreement, did not remember seeing the agreement, did not click "acknowledge," or, if she did, did not intend to be bound by the arbitration agreement. *Id.* at \*4. Evaluating this declaration, the Court said, "[Plaintiff's] declaration fails to place the validity of the contract at issue under Sixth Circuit law. . . . [T]he fact that she cannot remember having gone through the [training] and her statement that she did not see the [arbitration agreement] is insufficient to create a fact issue." *Id.* (citing *DeOrnellas*, 295 F. Supp. 2d at 764); *cf. Boykin*, 3 F.4th at 840 (reasoning that the plaintiff's arguments that he "d[id] not have *knowledge or recollection* of accepting the arbitration contract" and "*flatly denied* accepting an arbitration contract . . . [or] receiving information about arbitration" were sufficient to put the contract's formation "in issue" where additional circumstantial evidence supported his arguments and called contract formation into question).

So too here. Hardaway's affidavit is inconsistent and insufficient to challenge the validity of the signed arbitration agreement.

8

Similarly, Hardaway's argument that she lacked sufficient opportunity to review is unavailing. Recall that Hardaway accessed the arbitration agreement through her iCIMS account. (ECF No. 8, PageID.43.) She created this account on November 18, 2019. (ECF No. 8-5, PageID.89.) And she signed the arbitration agreement on March 1, 2020. (*Id.* at PageID.90.) So she seems to have had more than three months to review the agreement. And even if the agreement was not available to her in November, Hardaway completed the agreement three days before it was due and did not request an extension. (ECF No. 18, PageID.242.) The Sixth Circuit has found even three days to be sufficient time to review an arbitration agreement, s*ee, e.g.*, *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc), and has held even five to ten minutes was adequate where the employee did not request more time, s*ee Solomon v. CARite Corp.*, 837 F. App'x 355, 363 (6th Cir. 2020).

In sum, because Aveanna has provided an arbitration agreement that Hardaway electronically signed, and because Hardaway has not sufficiently put the validity of that agreement at issue, Hardaway is subject to the arbitration agreement. And because that agreement contains a delegation clause, Hardaway must arbitrate even the threshold issue of arbitrability. Indeed, Hardaway makes no argument about the delegation clause and thus, has forfeited the issue. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 787 (6th Cir. 2019) ("Because plaintiffs failed to raise any arguments about common-law contractual duties in their consolidated response to defendants' motions to dismiss, this issue is forfeited.").

## II. Request to Stay or Dismiss

In its motion to compel arbitration, Aveanna also asked the Court to either dismiss the case or stay the proceedings pending arbitration. (ECF No. 8, PageID.34.)

Recently, the Supreme Court addressed the issue of whether a district court may dismiss a case when all of the claims are subject to mandatory arbitration. *Smith v. Spizzirri*, 601 U.S. ___ (2024). The Court concluded "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id.* It is unclear whether this rule applies to a case such as this one: Aveanna requested either stay or dismissal, and Hardaway asked that the Court "allow [her] claims to move forward," (ECF No. 14, PageID.162), so neither party has simply "requested a stay."

But Sixth Circuit case law also supports staying the case. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (explaining that the Federal Arbitration Act instructs district courts to stay cases pending arbitration if (1) the issue is arbitrable, (2) one of the parties applies for a stay, and (3) the party requesting a stay is not in default). And a stay is usually preferable to a dismissal, especially in cases like this one where there may be more issues for this Court to decide—e.g., if the arbitrator finds the dispute is not arbitrable. *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021). This comports with the Supreme Court's recent interpretation of the purposes of the federal arbitration act. *Smith*, 601 U.S. ___ (explaining that staying, rather than dismissing, a case

pending arbitration means the parties "can return to federal court if arbitration breaks down or fails to resolve the dispute," the party opposing arbitration cannot immediately appeal an order compelling arbitration, and the court can exercise its "supervisory role" as dictated by the FAA).

Thus, the Court will stay the proceedings, rather than dismiss the case.

### III. Conclusion

For the foregoing reasons, Aveanna's motion to compel arbitration (ECF No. 8) is GRANTED and the Court STAYS the proceedings, pending resolution of arbitration. And because the Court considered Hardaway's response without any prejudice to Aveanna, the motion to strike Hardaway's response as untimely (ECF No. 17) is DENIED AS MOOT.

SO ORDERED.

Dated: May 20, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE